IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NICOLE GROSS-JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0132-WS-M |
| ) | |
| **MERCY MEDICAL, etc.,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This matter is before the Court on the defendant's motion for reconsideration. (Doc. 92). The motion addresses certain aspects of the Court's ruling on the defendant's motion for summary judgment. (Doc. 91). The plaintiff has filed a response to the instant motion, (Doc. 96), which is ripe for resolution. The Court concludes that the motion is due to be granted in part and denied in part.

## DISCUSSION

The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (en banc). Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Nor may it be used to "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to

[1]

correct clear error or manifest injustice." *Gibson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007) (internal quotes omitted).[1]  As this Court has noted, "[m]otions to reconsider serve a valuable but limited function.  They do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted.  They do not, in short, serve to relieve a party of the consequences of its original, limited presentation." *Dyas v. City of Fairhope*, 2009 WL 5062367 at *3 (S.D. Ala. 2009).  The defendant's motion, which fails to acknowledge these principles, is nonetheless governed by them.

### A. August 19, 2010 Retaliation.

The Court ruled that the first date the plaintiff engaged in potentially protected activity was August 19, 2010, when she registered a verbal complaint to Griggs.  (Doc. 91 at 21-22, 25).  The Court thus ruled that alleged retaliatory conduct preceding that date could not support a retaliation claim.  (*Id*. at 25 & n.23).  The defendant argues that the same result must obtain with respect to Griggs' allegedly retaliatory conduct of August 19, because it immediately preceded (and triggered) the plaintiff's verbal complaint.  (Doc. 92 at 1-2).

---

[1] While *Mays* and *Wilchombe* involved  post-judgment motions under Rule 59(e), courts within this Circuit have often applied these principles to pre-judgment motions to reconsider. *E.g., Busby v. JRHBW Realty, Inc*., 2009 WL 1181902 at *2 (N.D. Ala. 2009); *Controlled Semiconductor, Inc. v. Control Systemation, Inc*., 2008 WL 4459085 at *2 (M.D. Fla. 2008); *Eslava v. Gulf Telephone Co.*, 2007 WL 1958863 at *1 (S.D. Ala. 2007); *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).  This is only sensible, since allowing parties to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context. *E.g., Gibson*, 511 F. Supp. 2d at 1185 (even pre-judgment, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly").  The problem is especially acute in this case where, despite the parties' excellent presentations, the complicated nature of the case has required an inordinate investment of judicial resources to resolve the motion for summary judgment.

It was not clear to the Court that all of Griggs' objectionable conduct during her encounter with the plaintiff on August 19 preceded the plaintiff's complaint. The plaintiff, however, now confirms that the defendant's chronology is correct. (Doc. 96 at 4-5). With that concession, the defendant is entitled to summary judgment as to the August 19 incident.

The plaintiff argues she should still avoid summary judgment as to the August 19 incident because Griggs' conduct followed the plaintiff's April 2010 report of sexual harassment against Lawrence. (Doc. 96 at 5-6). The Court, however, has already ruled that the plaintiff "cannot pursue a claim of retaliation based on her submission of that complaint," since any subjective belief she may have possessed that the conduct she reported to management violated Title VII was not objectively reasonable. (Doc. 91 at 22). That ruling remains unchallenged and intact, and it defeats the plaintiff's argument.

### B. Other 2010 Complaints of Retaliation.

The plaintiff presented evidence that, on August 19, October 20 and November 2, 2010, she complained of retaliation against her. (Doc. 91 at 21). The defendant asserts that she complained only of retaliation for making her April 2010 report of sexual harassment against Lawrence and argues that, since the April 2010 report was not protected activity, complaining of retaliation for having made the report cannot be protected activity, either. (Doc. 92 at 2-4). The defendant's threshold, fatal problem is that it made no such argument on motion for summary judgment, and it cannot use its motion to reconsider as a vehicle to inject new arguments.[2]

---

[2] The defendant suggests that it argued that these complaints of retaliation were not protected activity, (Doc. 92 at 4), but the portion of its principal brief to which it cites explicitly limited its "protected activity" argument to the April and November 2010 complaints of sexual harassment. (Doc. 64 at 32-33).

### C.  October 20 and November 2 Acts of Retaliation.

Continuing its preceding argument, the defendant argues that its conduct of October 20 and November 2 could not be retaliatory because the plaintiff did not engage in protected activity preceding those actions. (Doc. 92 at 4). Because its argument in Part B fails, its argument in Part C necessarily fails as well.

### D.  Opposition-Clause Retaliation Claim.

The Court granted the defendant summary judgment with respect to the plaintiff's claim that her December 6, 2010 written warning and PIP, her December 7 suspension, and her December 20 written warning were retaliatory under the participation clause of Section 2000e-3(a). (Doc. 91 at 36-38). The Court denied the defendant summary judgment with respect to the plaintiff's claim that these employment actions were retaliatory under the opposition clause. (*Id*. at 29-30). The defendant argues that the plaintiff's Title VII retaliation claim "cannot be divided" between participation and opposition and that her inability to establish a genuine issue of fact as to pretext for purposes of the participation clause necessarily dooms her case under the opposition clause. (Doc. 92 at 4-6).

The defendant, however, explicitly divided its argument in support of summary judgment between the opposition clause and the participation clause. (Doc. 64 at 32-35 (titled, "1.  Title VII – opposition to unlawful employment practices."); *id*. at 35-40 (titled, "2.  Title VII:  participating in EEOC proceedings"). Moreover, the defendant introduced its argument by explicitly offering only different grounds in support of its motion as to the two clauses:

> Mercy Medical is entitled to summary judgment on Jones' Title VII retaliation claim because she did not engage in statutorily protected activity to support her "opposition clause" claim, and because she cannot establish a causal connection between any protected activity and any adverse employment action to support her "participation clause" claim.

(Doc. 64 at 32).

[4]

The defendant's actual argument was broader than its introduction promised, but it was still not identical as between the two sections.  In particular, under its participation-clause argument, the defendant articulated legitimate, non-retaliatory reasons for its actions on December 6, 7 and 20 and asserted the plaintiff could not prove these reasons were a pretext for retaliation, (Doc. 64 at 38-39), and upon these grounds the Court granted the defendant summary judgment.  Under its earlier, opposition-clause argument, the defendant articulated such reasons only for certain actions occurring before the plaintiff's November 2010 EEOC charge.  (*Id*. at 35).  It neither addressed the December 2010 conduct nor incorporated its participation-clause discussion of these events.  The Court noted the oddity of the defendant ignoring conduct occurring after the plaintiff's charge, (Doc. 91 at 30 n.29), but it honored the defendant's election to do so.  This was consistent with the Court's prefatory notice, consonant with controlling law, that:

> "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

(*Id*. at 3).

The defendant is correct that it addressed the December 2010 conduct, (Doc. 92 at 5), but neither its participation-clause argument nor its introductory summary of the evidence constituted an argument that the opposition-clause claim based on this conduct should be dismissed on the same grounds.  That such an argument could have been successfully asserted by the defendant did not compel the Court to make such an unasserted argument on the defendant's behalf.  The Court committed no clear error and inflicted no manifest injustice by holding the defendant to the limited argument it elected to present.

### E.  Retaliatory Termination – Title VII.

The defendant argued that McFeely, when he terminated the plaintiff, had "three separately valid reasons" for doing so.  (Doc. 83 at 25).  The Court identified these

[5]

reasons as the conduct underlying the plaintiff's suspensions of December 2010, January 2011 and April 2011. (Doc. 91 at 35). The Court concluded that the plaintiff had created a genuine issue as to whether her January and April 2011 suspensions were the product of unlawful retaliation but had not created such an issue with respect to her December suspension. (*Id*. at 36-43). The Court then concluded that the plaintiff had created a genuine issue as to whether her termination was retaliatory because two of the suspensions on which it was allegedly based could be found to be separately retaliatory and because the defendant offered no evidence that it would have terminated the plaintiff based exclusively on the conduct underlying the December suspension. (*Id*. at 43 & n. 44).

The defendant argues that the conduct underlying the December 7 suspension (refusing to sign a performance improvement plan ("PIP")) was not one of the three reasons for the plaintiff's termination but that the conduct underlying her December 20 written warning (failing to conduct the monthly pizza party) was. (Doc. 92 at 6-7). This is incorrect. The defendant in brief never identified what the reasons for the plaintiff's termination were, but in describing her termination it cited to specific pages of McFeely's deposition. (Doc. 64 at 22). McFeely therein testified that "the termination notice … lists … the three infractions during the performance improvement plan" and that "any one of them [would] have constituted grounds for termination." (McFeely Deposition at 198-99). The three infractions listed on the plaintiff's termination notice are her suspensions of December 7, 2010, January 3, 2011, and April 15, 2011. (Defendant's Exhibit 42). Because this is the defendant's only record evidence of what its reasons were for terminating the plaintiff, they are the only reasons the Court could consider,[3] and the defendant is not free in brief to identify different reasons.

---

[3] As the Court's order notes, to meet its intermediate burden the defendant must rely on "'admissible evidence'" of its "'actual motivations.'" (Doc. 91 at 28 (quoting Supreme Court and Eleventh Circuit precedent)).

The defendant's argument proceeds from its incorrect premise that the December 20 written warning is at issue. It argues that "it provided uncontroverted evidence that the botched pizza party was an independent ground for termination," such that the plaintiff's claim of retaliatory termination could not survive without her providing "evidence that the failed pizza party was *not* an independent ground for termination." Since the plaintiff allegedly did not do so, the defendant concludes it is entitled to summary judgment. (Doc. 92 at 6-7).

There is considerable doubt whether the defendant actually raised such an argument in support of its motion for summary judgment. For reasons set forth previously, it cannot now raise an argument it withheld at the proper time. But, even if timely raised, the argument fails for multiple independent reasons as well.

The threshold problem, of course, is that the defendant has no evidence the botched pizza party was one of its three reasons for terminating the plaintiff. Absent such evidence, the plaintiff could not be required to do anything at all.

Substituting the December 7 failure to sign a PIP for the December 20 failure to host a pizza party would not aid the defendant's position. Under the defendant's argument, the plaintiff's proof failed only if the defendant first presented evidence that the December 7 incident was an independent ground for her termination. But McFeely's testimony on this score is not that he *would* have fired the plaintiff *on April 29* based solely on her brief failure to sign a PIP almost five months earlier but only that he *could* have, *the previous December*, justifiably fired her for it.[4]

Finally, the defendant's argument rests on another false premise – that, because the plaintiff has no evidence that the decision to suspend her in December 2010 was retaliatory, she could have no evidence that a decision to terminate her in April 2011

---

[4] This is the obvious meaning of McFeely's testimony but, even if it were not, the Court has already noted that, "[i]n deciding a motion for summary judgment, '[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant ....' *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)." (Doc. 91 at 3).

[7]

based on the December 2010 conduct was retaliatory. This is a non sequitur. There is in fact abundant evidence that any such alleged decision would be a pretext for retaliation. Without pretending to be exhaustive, the Court notes: (1) the suspicious willingness of the defendant to continue the plaintiff's employment for almost five months after this supposedly terminable offense, only to fire her less than a month after McFeely learned she had filed this action; (2) the facially minor nature of the incident – refusing to sign a PIP because it carried what she considered an incorrect job title – when even the defendant's human resources director concedes that signature is not "necessarily absolutely" required; (3) the plaintiff's ultimate signing of the PIP at the conclusion of her suspension, thereby obviating management's expressed concern that "[w]e obviously want to be able to show that you had reviewed that, again, with the individual," (Doc. 91 at 36); and (4) the copious evidence that the January and April suspensions were retaliatory. (*Id*. at 38-43).

### F.  Retaliatory Termination – FMLA.

The defendant seeks merely to reargue its motion for summary judgment. (Doc. 92 at 8-9). This is an improper use of a motion to reconsider.

## CONCLUSION

For the reasons set forth above, the defendant's motion for reconsideration is **granted** with respect to the defendant's argument that Griggs' conduct on August 19, 2010 was not retaliatory. In all other respects, the motion is **denied**.[5]

---

[5] In her brief, (Doc. 96 at 11-2), the plaintiff asks the Court to "consider the impact" of *Gowski v. Peake*, ___ F.3d ___, 2012 WL 1986446 (11th Cir. 2012), which recently joined "every other circuit" in "recogniz[ing] a retaliatory hostile work environment claim." *Id*. at *8. The plaintiff "respectfully submits that the evidence presented before this Court is sufficient to maintain a retaliatory hostile environment" claim. (Doc. 96 at 12). Perhaps so, but there is no claim for retaliatory hostile work environment pleaded in the amended complaint. Nor has the plaintiff moved to amend so as to add such a claim. Until and unless the plaintiff successfully (Continued)

DONE and ORDERED this 26th day of June, 2012.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

does so or the defendant effectively consents to the assertion of such a claim, it is not part of this case.